UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ERIC JACKSON,

                            Plaintiff,

        v.

ANDREW CUOMO *et al.*,

                            Defendants.

No. 20-CV-8930 (KMK)

OPINION & ORDER

Appearances:

Eric Jackson
Bronx, NY
*Pro Se Plaintiff*

Jeb Harben, Esq.
Jonathan James Wilson, Esq.
NYS Office of the Attorney General
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

        Eric Jackson ("Plaintiff"), proceeding pro se, brings this Complaint, pursuant to 42

U.S.C. § 1983, against Andrew Cuomo ("Cuomo"), Leroy Fields ("Fields"), Beverly Lockwood

("Lockwood"), Anthony Annucci ("Annucci"), the New York State Division of Parole Brooklyn

# 2 ("NYS Parole Office"), and the New York State Board of Parole ("NYS Parole Board" and

collectively, "Defendants"),[1] alleging that Defendants violated Plaintiff's rights by keeping him

incarcerated beyond his maximum release date and not assisting him in locating housing that

---

[1] Defendants NYS Parole Brooklyn II Office and NYS Parole Board (together, the "Parole Defendants") were dismissed by this Court's Order dated December 7, 2020.  (Dkt. No. 10.)

complies with the New York Sexual Assault Act ("SARA").  (Compl. (Dkt. No. 1)); *see also*

N.Y. Exec. Law § 259-c(14).  Before the Court is Defendants' Motion to Dismiss the Complaint

(the "Motion"), filed pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  (Not.

of Mot. (Dkt. No. 31).)  For the following reasons, Defendants' Motion is granted.

## I.  Background

A.  Factual Background

Unless otherwise stated, the following facts are drawn from Plaintiff's Complaint and are

assumed true for the purpose of resolving the instant Motion.

The events giving rise to this Action took place while Plaintiff was incarcerated at

Fishkill Correctional Facility ("Fishkill") in Duchess County, New York.  (*See* Compl. at 3.)[2]

Plaintiff alleges that from April 4, 2020, through October 5, 2020,[3] Defendants kept him in

prison past his maximum release date and did not assist him in obtaining housing that complied

with SARA, which requires the NYS Parole Board to approve the residence of a registered sex

offender.  (*See* Compl. at 4); *see also* N.Y. Exec. Law § 259-c(14).

Plaintiff alleges that "Bellevue [] already said they [would] house [him] in accordance

with the SARA law," but Defendants "act[ed] as a gate[-]keeper[s] refusing to release or deliver

[him] to [B]ellevue."  (Compl. at 4.)  Plaintiff claims that he asked Defendant Lockwood, the

Offender Rehabilitation Coordinator ("ORC"), (*see* Defs.' Mem. in Supp. of Mot. to Dismiss

("Defs.' Mem.") at 1 (Dkt. No. 32)), to be released to "Bellevue" but "she said no," (Compl. at

4).  Plaintiff further alleges that Defendant Lockwood was "suppose[d] to assist [him] with [his]

---

[2] When citing to the Complaint, the Court refers to the ECF-stamped page numbers at the top right-hand corner of each page.

[3] October 5, 2020 is the date on which Plaintiff signed the Complaint.  (Compl. at 6.)

release[,] [but] she has not done anything." (Compl. at 4.)  According to Plaintiff, Defendant

Fields, the Superintendent at Fishkill, (*see* Defs.' Mem. at 1), "knowingly den[ied] [his] release

due to [Plaintiff] not having a SARA compliant address" and "refus[ed] to have [Plaintiff]

delivered to a compliant shelter," (Compl. at 4).  Plaintiff alleges that the Parole Defendants

"don't answer the phone most of the time[,] and when they do[,] they say there's nothing they

can do to help." (*Id.*)  Plaintiff alleges that the Parole Defendants inspected his sister's residence

and told Plaintiff that it was "approved, only to deny it later." (*Id.*)  Finally, Parole Defendants

also allegedly "told [Plaintiff's] family that they can legally hold [Plaintiff] in prison for the

remain[der] of [his] parole time if no address is obtained." (*Id.*)

According to New York State Department of Corrections ("DOCCS") records, Plaintiff's

maximum release date was April 5, 2020, and Plaintiff was released to parole supervision on

March 3, 2021.  (Defs.' Mem. at 4; *see also* Ex. A to Defs.' Mem. ("DOCCS Inmate Lookup") at

2–3 (Dkt. No. 32-1).)[4]

Liberally construed, Plaintiff alleges that Defendants violated his Eighth and Fourteenth

Amendment rights.  Plaintiff claims that as a result of Defendants' alleged violations, he has

suffered "mental strain" and has, as a result, had to "use [his] psych meds." (Compl. at 4.)

---

[4] "In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks omitted).  However, when the complaint is from a pro se plaintiff, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint." *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (quotation marks omitted).  Because the exhibit attached to Defendants' Motion, (Dkt. No. 32-1), is consistent with the allegations in the Complaint (Dkt. No. 1), the Court will consider the document attached to Defendants' Motion.

Plaintiff sues all Defendants in their official and individual capacities.  (*Id*. at 1.)  Plaintiff seeks

to be released from prison and a total of $650,000 in damages.  (*Id.* at 6.)[5]

B.  Procedural History

Plaintiff filed his Complaint on October 15, 2020, in the Eastern District of New York.

(Dkt. No. 1.)  On October 22, 2020, the case was transferred to the Southern District of New

York.  (Dkt. (entry for Oct. 22, 2020).)  On November 20, 2020, the Court granted Plaintiff leave

to proceed in forma pauperis.  (Dkt. No. 8.)  On December 7, 2021, the Court dismissed the

claims against the Parole Defendants as being barred by the Eleventh Amendment.  (Dkt. No.

10.)  On January 4, 2021, Plaintiff filed his First Amended Complaint ("FAC").  (Dkt. No. 13.)[6]

On February 16, 2021, Defendants requested an extension of time to respond to the Complaint,

(Dkt. No. 18), which the Court granted on February 17, 2021, (Dkt. No. 19.)  On March 11,

2021, Plaintiff filed a Notice of Change of Address.  (Dkt. No. 21.)  On March 25, Defendants

---

[5]  Plaintiff seeks $100,000 from Defendant Cuomo, $100,000 from Defendant Fields, $50,000 from Defendant Lockwood, $150,000 from Defendant Annucci, and $250,000 from the Parole Defendants.  (Compl. at 6.)  The Court notes that Plaintiff did not update the distribution of damages after the Parole Defendants were dismissed.

[6] Though it is styled as a FAC, the Court notes that the FAC does not repeat the factual allegations in the Complaint; it substitutes the Parole Defendants with "John Does" 1-2 and makes factual allegations relating to them.  (*See* First Amended Complaint ("FAC") (Dkt. No. 13).)  Specifically, Plaintiff alleges that "John Doe 1 approved [P]laintiff's address and John Doe 2 arbitrarily rescind[ed] that approval without adequate notice and the opportunity to be heard." (*Id.* ¶ 2–3).)  For the remainder of the FAC, the Plaintiff appears to make legal arguments regarding his case in response to the Court's December 7, 2020 Order.  (*See generally id*.)

Although "an amended complaint ordinarily supersedes the original and renders it of no legal effect," *Arce v. Walker*, 139 F.3d 329, 332 n.4 (2d Cir. 1998) (quoting *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977)), "[g]iven Plaintiff's pro se status . . . the Court will consider both the [First] Amended Complaint and [] Complaint together, *Guy v. MTA New York City Transit*, 403 F. Supp. 3d 131, 133 (E.D.N.Y. 2017) (considering the pro se plaintiff's third amended complaint and first amended complaint together where the third amended complaint omitted facts pled in the first amended complaint).

requested a second extension of time to respond to the Complaint, (Dkt. No. 22), which the Court granted on March 27, 2021, (Dkt. No. 23.)  On April 28, 2021, Defendants filed a pre-motion letter outlining the grounds for their proposed Motion to Dismiss.  (Dkt. No. 28.)  On April 29, 2021, the Court granted Defendants leave to file their Motion and set a briefing schedule.  (Dkt. No. 29.)  On May 25, 2021, Defendants filed their Motion to Dismiss and accompanying papers. (Dkt. Nos. 31–33.)  Because Plaintiff never responded, the Court considers this Motion fully briefed.

## II.  Discussion

### A.  Standard of Review

"The standards of review for a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction and under 12(b)(6) for failure to state a claim are 'substantively identical.'" *Gonzalez v. Option One Mortg. Corp.*, No. 12-CV-1470, 2014 WL 2475893, at *2 (D. Conn. June 3, 2014) (quoting *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 128 (2d Cir.), *cert. denied*, 540 U.S. 1012 (2003)).

### 1.  Rule 12(b)(1)

"A federal court has subject matter jurisdiction over a cause of action only when it has authority to adjudicate the cause pressed in the complaint." *Bryant v. Steele*, 25 F. Supp. 3d 233, 241 (E.D.N.Y. 2014) (citation and quotation marks omitted).  "Determining the existence of subject matter jurisdiction is a threshold inquiry[,] and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citation and quotation marks omitted), *aff'd*, 561 U.S. 247 (2010); *see also United States v. Bond*, 762 F.3d 255, 263 (2d Cir. 2014) (describing subject matter jurisdiction as the

"threshold question" (citation and quotation marks omitted)).

The Second Circuit has explained that a challenge to subject-matter jurisdiction pursuant to Rule 12(b)(1) may be either "facial or fact-based." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016). When a defendant raises a facial challenge to standing based solely on the complaint and the documents attached to it, "the plaintiff has no evidentiary burden" and a court must determine whether the plaintiff asserting standing "alleges facts that affirmatively and plausibly suggest that the plaintiff has standing to sue." *Id*. (alterations omitted) (quoting *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011)). In making such a determination, a court must accept as true all allegations in the complaint and draw all inferences in the plaintiff's favor. *Id*. at 57. However, where a Rule 12(b)(1) motion is fact-based and a defendant proffers evidence outside the pleadings, a plaintiff must either come forward with controverting evidence or rest on the pleadings if the evidence offered by the defendant is immaterial. *See Katz v. Donna Karan Co., L.L.C.*, 872 F.3d 114, 119 (2d Cir. 2017). If the extrinsic evidence presented by the defendant is material and controverted, the Court must "make findings of fact in aid of its decision as to standing." *Carter*, 822 F.3d at 57.

## 2. Rule 12(b)(6)

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of [its] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). "Nor does a complaint

suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and quotation marks omitted). Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999)

(citation and quotation marks omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).  However, when the complaint is from a pro se plaintiff, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (quotation marks omitted).

Where, as here, a plaintiff proceeds pro se, the court must "construe[] [the plaintiff's] [complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (citation and quotation marks omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law."  *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (citation and quotation marks omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics, citation and quotation marks omitted)).

B.  Analysis

1.  Injunctive Relief

In his Complaint, Plaintiff seeks to be released from prison.  (Compl. at 5.)  Defendants argue that the Court should dismiss Plaintiff's claims for injunctive relief as moot under Fed. R. Civ. P. 12(b)(1) because "Plaintiff was released from custody on March 3, 2021 and is currently under post-release supervision."  (Defs.' Mem. at 4.)  Defendants cite to the fact that Plaintiff filed a Notice of Change of Address on March 11, 2021, which contained Plaintiff's new address in the Bronx, New York.  (Dkt. No. 21.)  Defendants also have attached a print-out out of the DOCCS "Inmate Lookup" feature, which shows that Plaintiff was released on March 3, 2021.

(DOCCS Inmate Lookup at 2).  Thus, Plaintiff's request for injunctive relief is moot because Plaintiff has already been released from prison.  *See Pugh v. Goord*, 571 F. Supp. 2d 477, 490 (S.D.N.Y. 2008) ("The [c]ourt finds that, given that [the] plaintiff . . . was released from prison . . ., [his] claims for injunctive and/or declaratory relief against [DOCCS] are moot.").  Therefore, Plaintiff's injunctive claims are dismissed.

### 2. Eleventh Amendment

"[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogated the states' Eleventh Amendment immunity."  *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) (citation and quotation marks omitted).  New York has not waived its Eleventh Amendment immunity to suit in federal court, and Congress did not abrogate the states' immunity in enacting 42 U.S.C. § 1983.  *See Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 40 (2d Cir. 1977); *Dubarry v. Capra*, No. 21-CV-5487, 2021 WL 3604756, at *1 (S.D.N.Y. Aug. 13, 2021).  "The immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state."  *Gollomp*, 568 F.3d at 366.  The Eleventh Amendment therefore also bars the claims for damages against individual defendants in their official capacities.  *See Kentucky v. Graham*, 473 U.S. 159, 166–67 (1985); *Ying Jing Gan v. City of N.Y.*, 996 F.2d 522, 529 (2d Cir. 1993) ("To the extent that a state official is sued for damages in his [or her] official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state."); *Leon v. Rockland Psychiatric Ctr.*, 232 F. Supp. 3d 420, 436 (S.D.N.Y. 2017); *Perciballi v. New York*, No. 09-CV-6933, 2010 WL 3958731, at *4 (S.D.N.Y. Sept. 28, 2010).  Thus, all claims filed against Defendants in their official capacities are dismissed.

### 3.  Personal Involvement

With respect to Plaintiff's remaining claims against Defendants in their individual

capacities, "[i]t is well settled that, in order to establish a defendant's individual liability in a suit

brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the

alleged constitutional deprivation."  *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir.

2013).  To establish personal involvement, a plaintiff must show that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the
> defendant, after being informed of the violation through a report or appeal, failed to
> remedy the wrong, (3) the defendant created a policy or custom under which
> unconstitutional practices occurred, or allowed the continuance of such a policy or
> custom, (4) the defendant was grossly negligent in supervising subordinates who
> committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the
> rights of inmates by failing to act on information indicating that unconstitutional acts
> were occurring.

*Id.* at 139 (alterations, italics, and quotation marks omitted).  In other words, "because vicarious

liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official

defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*,

556 U.S. at 676.  Therefore, Plaintiff must plausibly allege that Defendants' actions fall into one

of the five categories identified above.  *See Lebron v. Mrzyglod*, No. 14-CV-10290, 2017 WL

365493, at *4 (S.D.N.Y. Jan. 24, 2017) (holding that the five categories "still control[] with

respect to claims that do not require a showing of discriminatory intent" post-*Iqbal*).

"Plaintiff has not alleged any way in which" Defendant Cuomo "w[as] personally

responsible for, or involved in the circumstances that resulted in, [Plaintiff's] continued

incarceration beyond his [maximum] release date."[7]  *D'Angelo v. Annucci*, No. 16-CV-6459,

---

[7]  Defendant Cuomo was the Governor of the State of New York at the time of Plaintiff's
incarceration.  (Defs.' Mem. at 1.)

2017 WL 6514692, at *5 (S.D.N.Y. Dec. 19, 2017).  Defendant Cuomo is not "even mentioned

by name or position in the body of the Complaint, which is itself ground for dismissal."  *Id.*; *see

also Manley v. Ramos*, No. 13-CV-2662, 2014 WL 1496094, at *2 (S.D.N.Y. Apr. 16, 2014)

(dismissing claims where the plaintiff "name[d] [police officers] as defendants in the caption, but

. . . never mention[ed] them again in the body of the complaint"); *Ortiz v. Bloomberg*, No. 10-

CV-9434, 2011 WL 4822829, at *3 (S.D.N.Y. Oct. 7, 2011) (dismissing claims where "the only

named reference to [certain correctional officers] [was] in the caption of the [c]omplaint, and the

only additional references to these defendants [were] merely conclusory statements about their

personal involvement and liability").  Thus, the complaint against Defendant Cuomo in his

individual capacity is dismissed.[8]

  With respect to Defendant Annucci,[9] Plaintiff alleges that he wrote "letters to [Defendant

Annucci] about [] being held past [his] max[imum] due date" and "[a]sk[ed] [Defendant

Annucci] to release [him] to a shelter[,] only for him to tell [Plaintiff] there's nothing he can do,

and that [Plaintiff's] ORC is responsible for helping [him] with [his] situation."  (Compl. at 5.)

However, "writing to a supervisory official is insufficient to establish . . . personal involvement."

*Simpson v. Rodas*, No. 10-CV-6670, 2012 WL 4354832, at *8 (S.D.N.Y. Sept. 21, 2012)

(collecting cases); *see also Rivera v. Pataki*, No. 04-CV-1286, 2005 WL 407710, at *22

(S.D.N.Y. Feb. 7, 2005) ("Simply because [the plaintiff] wrote to th[is] supervisory official[]

complaining of mistreatment does not justify holding [him] liable under § 1983."); *Johnson v.

Wright*, 234 F. Supp. 2d 352, 363 (S.D.N.Y. 2002) ("[T]o allow a mere letter to an official to

---

[8] Defendants argue that Plaintiff's service on Defendant Cuomo was improper.  (Defs.'
Mem. at 8–9.)  Given that all claims against Defendant Cuomo—in both his official and
individual capacities—have been dismissed, the Court need not address this issue.

[9] Defendant Annucci is the Acting Commissioner of DOCSS.  (Defs.' Mem. at 1.)

impose supervisory liability would permit an inmate to place liability on individuals who had no authority over the situation complained of merely by sending letters.")  Thus, the complaint against Defendant Annucci in his individual capacity is dismissed.

Defendant Fields, alleged to be the Superintendent of Fishkill during the relevant time period, (Defs.' Mem. at 1), is mentioned because he allegedly "knowingly den[ied] [Plaintiff's] release due to [him] not having a SARA[-]compliant address, (Compl. at 4).  He refuses to have [Plaintiff] delivered to a compliant shelter."  (Compl. at 4.)  Plaintiff does not allege whether he spoke or wrote to Defendant Fields or whether Defendant Fields made any decisions relating to Plaintiff's continued incarceration.  "[A]mple Second Circuit case law makes clear that a [p]laintiff does not state a claim where he alleges only that a supervisory official received reports of wrongdoing.  *Luck v. Westchester Med. Ctr.*, No. 17-CV-9110, 2020 WL 564635, at *11 (S.D.N.Y. Feb. 4, 2020) (citation, alteration, and quotation marks omitted)).  Even if Plaintiff did write to Defendant Fields, as discussed previously, "numerous district courts in this Circuit have held that receipt of letters or grievances is insufficient to impute personal involvement."  *Gonzalez v. Sarreck*, No. 08-CV-3661, 2011 WL 5051341, at *15 (S.D.N.Y. Oct. 24, 2011).  Thus, the complaint against Defendant Fields in his individual capacity is dismissed.

With respect to Defendant Lockwood, Plaintiff alleges that she "meets with [Plaintiff] once every two weeks only to ask [him] if [he] has an address to propose."  (Compl. at 4.)  Plaintiff also alleges that he asked Defendant Lockwood to be released to Bellevue but "she said no."  (*Id.*)  Plaintiff further alleges that Defendant Lockwood was "suppose[d] to assist [him] with [his] release[,] [but] she has not done anything."  When Plaintiff wrote to Defendant Annucci about the situation, he told Plaintiff that there was nothing that he could do and that Plaintiff's "ORC is responsible for helping [him] with his situation."  (Compl. at 5.)  Because

Defendant Lockwood is Plaintiff's ORC, (*see* Defs.' Mem. at 1), Plaintiff has sufficiently alleged that Defendant Lockwood "participated directly" in the alleged violations.  *See Grullon*, 720 F.3d at 139.  Thus, the Court concludes that Plaintiff has plausibly alleged Defendant Lockwood's personal involvement.

Regarding John Does 1 and 2, Plaintiff alleges that "John Doe 1 approved [P]laintiff's address and John Doe 2 arbitrarily rescind[ed] that approval without adequate notice and the opportunity to be heard."  (FAC ¶ 2–3.)  Defendants fail to mention John Does 1 and 2 in their Memorandum.  (*See generally* Defs.' Mem.)  "Because . . . Defendants' argument is not supported by authority or detail, the Court has no basis upon which to determine that Plaintiffs' allegation[s] related to [John Does 1 and 2] [are] insufficient to establish his personal involvement in any alleged constitutional violations."  *Indig v. Vill. of Pomona*, No. 18-CV-10204, 2021 WL 3773653, at *5 (S.D.N.Y. Aug. 24, 2021).  Thus, the Court concludes that Plaintiff has plausibly alleged the personal involvement of John Does 1 and 2.

### 4.  Application of *Heck v. Humprey*

In *Heck v. Humphrey*, the Supreme Court held that "a state prisoner's claim for damages is not cognizable under 42 U.S.C. § 1983 if 'a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence,' unless the prisoner can demonstrate that the conviction or sentence has previously been invalidated."  *Edwards v. Balisok*, 520 U.S. 641, 643 (1997) (quoting *Heck v. Humphrey*, 512 U.S. 477, 487 (1994)).  Moreover, while *Heck* held that the favorable-termination rule is triggered when a prisoner's success would "necessarily imply the invalidity of the conviction," 512 U.S. at 487, the Supreme Court has since clarified that *Heck* applies to any challenge to the duration of "confinement" that necessarily implies the invalidity of that confinement, even if that challenge would not implicate

the underlying conviction or sentence, *see Wilkinson v. Dotson*, 544 U.S. 74, 81–82 (2005) ("[A]

state prisoner's § 1983 action is barred . . . if success in that action would necessarily

demonstrate the invalidity of confinement or its duration."); *Edwards*, 520 U.S. at 648 (finding

that a prisoner's claim for money damages alleging that he was deprived of good-time credits

without due process necessarily implies the invalidity of the "punishment imposed," meaning the

deprivation of the credits).  Absent such a showing, a prisoner may only seek relief in the federal

courts through a petition for habeas corpus.  *See Wilkinson*, 544 U.S. at 81 (holding that habeas

corpus is the only remedy available to prisoners seeking to "invalidate the duration of their

confinement—either directly through an injunction compelling speedier release or indirectly

through a judicial determination that necessarily implies the unlawfulness of the State's custody"

(emphasis in original)); *see also Jenkins v. Haubert*, 179 F.3d 19, 23 (2d Cir. 1999) ("[W]here

the fact or duration of a prisoner's confinement is at issue, § 1983 is unavailable, and only §

2254(b) with its exhaustion requirement may be employed.").

   "Although the Second Circuit has not opined on this issue, several courts in the Second

Circuit have held that the *Heck* favorable termination rule applies to a plaintiff's [§] 1983 claims

so long as the plaintiff was in prison at the time the [§] 1983 action was commenced." *Smith v.

Rossini*, No. 19-CV-323, 2020 WL 9816016, at *7 (E.D.N.Y. Nov. 30, 2020); *see also Hamm v.

Farney*, No. 13-CV-1302, 2017 WL 8894723, at *8 (N.D.N.Y. Dec. 22, 2017) (applying the

*Heck* doctrine to a plaintiff's claims where the plaintiff commenced the action while in custody

of DOCCS and was released while the case was pending), *report and recommendation adopted,*

2018 WL 922149 (N.D.N.Y. Feb. 16, 2018); *D'Angelo*, 2017 WL 6514692, at *7 ("The [c]ourt

finds that *Heck* is applicable where [the] [p]laintiff was in DOCCS custody at the time he filed

his [c]omplaint."); *Bonano v. Staniszewski*, No. 12-CV-5879, 2016 WL 11263168, at *7

14

(E.D.N.Y. Sept. 2, 2016) (same), *report and recommendation adopted*, 2017 WL 4220402

(E.D.N.Y. Sept. 22, 2017); *Hamm v. Hatcher*, No. 05-CV-503, 2009 WL 1322357, at \*8 n.6

(S.D.N.Y. May 5, 2009) ("[*Heck*] applies to plaintiffs who are incarcerated at the time that they

file their [§] 1983 actions, regardless of whether they are later released"); *Rolle v. Connell*, No.

05-CV-991, 2005 WL 3077474, at \*3 (N.D.N.Y. Nov. 16, 2005) (dismissal required because the

plaintiff did not file suit until after he was released from prison); *Gastelu v. Breslin*, No. 03-CV-

1339, 2005 WL 2271933, at \*4 (E.D.N.Y. Sept. 12, 2005) (finding *Heck* applicable so long as

the prisoner "was still in prison when he initiated this § 1983 action").

Defendants argue that Plaintiff's claims are barred by *Heck*.  (Defs.' Mem at 4–5.)

Defendants cite *Velazquez*, in which the court held that *Heck* barred Plaintiff's claims where "the

entirety of [the] [p]laintiff's Eighth Amendment claim rests on the very fact of his confinement

past his conditional release date. . . .  Thus, any judgment in favor of [the] [p]laintiff . . . would

'necessarily imply' the invalidity of confinement which has not yet been invalidated."  2020 WL

777907, at \*9.  Defendants also cite *D'Angelo*, in which the court held

> If the [c]ourt were to find that [the] [d]efendants should have located SARA compliant
> housing, and ceased imposing arbitrary and discriminatory burdens on assistance, there
> would have been no obstacle for Plaintiff to immediately obtain conditional release to
> parole. . . As such, the invalidity of his continued confinement beyond the date of his
> conditional release is 'necessarily impl[ied]' by this Action, and it is therefore barred
> under *Heck* and its progeny.

2017 WL 6514692, at \*7 (quoting *Ahlers v. Boruch*, No. 04-CV-1747, 2007 WL 2042794, at \*4

(E.D.N.Y. July 16, 2007)) (citation removed).  The present case can be distinguished, however,

because in *D'Angelo* and *Velazquez*, the plaintiffs were being held past their conditional release

and open release dates, respectively; here, Plaintiff was held past his *maximum* release date.  *See*

*Velazquez*, 2020 WL 777907 at \*1 (noting that the plaintiff was confined past his open parole

release date); *D'Angelo*, 2017 WL 6514692, at \*10 (noting that the plaintiff was not held beyond

his maximum sentence); *see also Hurd v. City of New York,* No. 18-CV-3704, 2019 WL 4696364, at *8 (E.D.N.Y. Sept. 26, 2019), *aff'd sub nom. Hurd v. Fredenburgh*, 984 F.3d 1075 (2d Cir. 2021), *cert. denied,* 142 S. Ct. 109 (2021) (noting that the "plaintiff was released prior to the expiration date of his maximum sentence").

However, courts in other districts have held that a plaintiff "may file a claim for damages under § 1983 for injury caused by imprisonment beyond his maximum sentence [only] once his confinement has been invalidated by state authorities, the state courts or by issuance of a writ of habeas corpus." *Owens v. Ortiz*, No. 05-CV-2351, 2005 WL 1199066, at *3 (D.N.J. May 19, 2005); *see also Atwell v. Lavan*, 557 F. Supp. 2d 532, 563–64 (M.D. Pa. 2008), *aff'd*, 366 F. App'x 393 (3d Cir. 2010) (same); *Mosch v. Brown,* No. 06-CV-4067, 2006 WL 2711637, at * 3–4 (D.N.J. Sept. 20, 2006) (damages claim for confinement in excess of plaintiff's maximum term not cognizable under *Heck* when plaintiff failed to aver that the confinement had been deemed excessive by a state court or by a successful habeas petition); *Romano v. Taylor*, No. 06-CV-573, 2006 WL 2993231, at * 2 (D.N.J. Oct. 20, 2006) (claim that plaintiff's housing level illegally extended his term of confinement not cognizable under § 1983 until a state tribunal or a federal habeas court has declared the confinement illegal).

Here, although Plaintiff alleged that he was confined past his maximum release date, he has not alleged that his confinement was a deemed excessive by a state court or by a successful habeas petition. Thus, Plaintiff's § 1983 claims are barred by *Heck*.

### 5. Eighth Amendment

Plaintiff asserts a violation of his Eighth Amendment rights. To the extent that any portion of this claim is not barred by *Heck*, the Court concludes that Plaintiff has failed to sufficiently plead such a claim.

For extended incarceration to rise to the level of an Eighth Amendment violation, it "must . . . be the product of deliberate indifference." *Campbell v. Peters*, 256 F.3d 695, 700 (2d Cir. 2001), *cert. denied*, 535 U.S. 957 (2002).; *see also Calhoun v. N.Y. State Div. of Parole Officers*, 999 F.2d 647, 654 (2d Cir. 1993) (same); *accord Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985) ("Detention beyond the termination of a sentence could constitute cruel and unusual punishment if it is the result of 'deliberate indifference' to the prisoner's liberty interest; otherwise, such detention can be held to be unconstitutional only if it violates due process." (citations omitted)).

Courts have held that in order to allege an Eighth Amendment violation, a plaintiff must allege that he or she was incarcerated beyond his or her maximum release date. *See Santiago v. Annucci,* No. 20-CV-4530, 2021 WL 4392487, at *7 (S.D.N.Y. Sept. 24, 2021) (declining to find Eighth Amendment violation where complaint did not allege that the plaintiff "was held beyond his maximum sentence"); *D'Angelo*, 2017 WL 6514692, at *10 (declining to find Eighth Amendment violation where the plaintiff was "not held beyond his maximum sentence"); *Velazquez v. Gerbing*, No. 18-CV-8800, 2020 WL 777907, at *8 (S.D.N.Y. Feb. 18, 2020) (declining to find Eighth Amendment violation where the plaintiff was confined past his open parole release date, but not his maximum release date); *accord Joseph v. Cuomo*, No. 20-CV-3957, 2021 WL 200984, at *9 (E.D.N.Y. Jan. 20, 2021) ("[T]o prevail on [Eighth Amendment deliberate indifference] claims, plaintiffs must normally allege that they were held beyond their maximum sentence."); *Hurd v. City of New York,* No. 18-CV-3704, 2019 WL 4696364, at *8 (E.D.N.Y. Sept. 26, 2019), *aff'd sub nom. Hurd v. Fredenburgh,* 984 F.3d 1075 (2d Cir. 2021), *cert. denied*, 142 S. Ct. 109 (2021) (declining to find Eighth Amendment violation where the plaintiff was released prior to the expiration date of his maximum sentence).

In addition, courts in the Second Circuit have declined to find Eighth Amendment violations where the plaintiffs were only confined for several days beyond their maximum release dates.  *See Calhoun,* 999 F.2d at 654 (holding that five days of incarceration beyond the plaintiff's maximum sentence "did not inflict a harm of a magnitude that violates a person's [E]ighth [A]mendment rights" (quotation marks omitted)); *Lozada v. Warden Downstate Corr. Facility*, No. 10-CV-8425, 2012 WL 2402069, at *1 (S.D.N.Y. June 26, 2012) (holding that an "additional seven days of incarceration" beyond a prisoner's maximum sentence, "is insufficient to bring an Eighth Amendment claim"); *Brims v. Burdi*, No. 03-CV-3159, 2004 WL 1403281, at *2 (S.D.N.Y. June 23, 2004) (holding that six days of imprisonment beyond the plaintiff's maximum sentence "is not a harm of sufficient magnitude to implicate the Eighth Amendment").

Courts in other circuits have found Eighth Amendment violations where the inmates' "overstay[s] [in prison] involve significant periods of time."  *Gilblom v. Gillipsie*, No. 08-CV-1672, 2010 WL 1813494, at *9 (W.D. Pa. Apr. 6, 2010), *adopted by* 2010 WL 1813483 (W.D. Pa. May 5, 2010), *aff'd*, 435 Fed. App'x. 165 (3d Cir. 2011); *see also Sample v. Diecks*, 885 F.2d 1099 (3d Cir.1989) (finding violation where officials' miscalculation caused inmate to serve nine months and eight days beyond his maximum sentence); *Alston v. Read*, No. 07-CV-26, 2010 WL 144868 (D. Hawaii Jan. 14, 2010) (145-day overstay sufficient to state Eighth Amendment claim), *reversed and remanded on other grounds by Alston v. Read*, 663 F.3d 1094 (9th Cir. 2011); *Campbell v. Ill. Dept. of Corr.*, 907 F. Supp. 1173 (N.D. Ill. 1995) (same where plaintiff was incarcerated for two years beyond end of sentence).

Here, because at the time that Plaintiff filed his Complaint, he had been incarcerated for six months past his maximum release date, and at the time he filed his FAC, he had been

incarcerated for eight months past his release date,[10] the Court finds that Plaintiff has alleged facts sufficient to state an Eighth Amendment claim.  (*See* Compl at 5; FAC at 3; Defs.' Mem. at 4; DOCCS Inmate Lookup at 3.)

       <u>6. Fourteenth Amendment</u>

To the extent Plaintiff's procedural due process claim is not barred by *Heck*, it is also insufficiently pled.  Pursuant to the Due Process Clause of the Fourteenth Amendment, "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV; *see also Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (holding that a procedural due process violation arises under the Fourteenth Amendment when a plaintiff has been deprived of a constitutionally protected interest in life, liberty, or property without due process of law).  The Due Process Clause protects "the individual against arbitrary action of government."  *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974); *see also Zherka v. Ryan*, 52 F. Supp. 3d 571, 582 (S.D.N.Y. 2014) (same).  To state a procedural due process claim, a plaintiff "must first establish that he enjoyed a protected liberty interest."  *Arce v. Walker*, 139 F.3d 329, 333 (2d Cir. 1998).  If a plaintiff establishes such a protected interest, the next question is whether "the procedures followed by the State were constitutionally sufficient."  *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011).

"A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' . . . or it may arise from an expectation or interest created by state laws or policies . . . ."  *Wilkinson*, 545 U.S. at 221 (citations omitted).  "In order for a state prisoner to have an interest in parole that is protected by the Due Process Clause, he must have a legitimate

---

[10]   The Court also notes that Plaintiff was confined for a total of eleven months beyond his maximum release date—his maximum release date was April 5, 2020, and he was released on March 3, 2021.  (*See* Defs.' Mem. at 4; DOCCS Inmate Lookup at 2–3.)

expectancy of release that is grounded in the state's statutory scheme." *Barna v. Travis*, 239 F.3d 169, 170 (2d Cir. 2001) (per curiam). "Neither the mere possibility of release, nor a statistical probability of release, gives rise to a legitimate expectancy of release on parole." *Id.* at 171 (citations omitted). The Second Circuit "has recognized that inmates may fall along a 'continuum' of liberty interests ranging from inmates who may only have a 'unilateral hope' of early release to those who have already been released on parole." *Kindler v. City of New York*, No. 17-CV-9896, 2019 WL 4511717, at *4 (S.D.N.Y. Sept. 19, 2019) (citing *Victory v. Pataki*, 814 F.3d 47, 59–60 (2d Cir. 2016)); *see also Joseph*, 2021 WL 200984, at *6.

"[T]he Second Circuit has found that inmates have a 'liberty interest in being released upon the expiration of [their] maximum term of imprisonment.'" *Peterson v. Tomaselli*, 469 F. Supp. 2d 146, 164 (S.D.N.Y. 2007) (quoting *Calhoun*, 999 F.2d at 653). Here, Plaintiff was held beyond his maximum release date. (*See* Compl. at 4; DOCCS Inmate Lookup at 2–3.) Thus, Plaintiff has alleged a liberty interest in his release, satisfying the first prong of a procedural due process claim.

Under the second prong, Plaintiff must allege that "he was deprived of that liberty interest through insufficient due process." *Velazquez*, 2020 WL 777907, at *9. In *Velazquez*, the court held that the plaintiff had sufficient due process where he was "aware that his release is conditioned on the Parole Board's approval of a SARA-compliant residence," "attempted to advocate for his release to" a particular address, and "went on to challenge the denial through an Article 78 Petition, which was ultimately heard and dismissed, via a written opinion, by a New York State court." *Id.* at *9–10; *see also D'Angelo*, 2017 WL 6514692, at *9 (dismissing procedural due process claim under similar circumstances and noting that, because the plaintiff had meaningful opportunities to propose future residences, his challenge was "to the mere fact of

his confinement beyond his conditional release date, and is devoid of any allegations regarding specific deficiencies in the process he was afforded").  Courts have dismissed procedural due process claims where a mechanism exists to challenge a state official's action or deprivation, regardless of whether the plaintiff took advantage of it.  *See Hayes v. Annucci*, No. 14-CV-8845, 2016 WL 1746109, at *4–5 (S.D.N.Y. Apr. 29, 2016) (dismissing parole grantee's procedural due process claim and noting that the "Second Circuit has held that the *availability* of an Article 78 proceeding constitutes a meaningful post-deprivation remedy") (emphasis added) (citation omitted); *see also Moore v. Newton*, 220 F. Supp. 3d 275, 294–95 (E.D.N.Y. 2016) ("[T]he Second Circuit distinguishes between due process claims based on established state procedures and claims based on random, unauthorized acts by state employees. . . . Where a claim is based on such random, unauthorized acts, [however,] a prisoner's due process rights are not violated so long as the government provides a meaningful remedy subsequent to deprivation," such as "an Article 78 or habeas proceeding under state law." (citations, alterations, and quotation marks omitted)).

Here, Plaintiff alleges that he attempted to be housed in Bellevue, but Defendants refused to transfer him there.  (Compl. at 4.)  Specifically, he alleges, "Bellevue has already said they will house me in accordance [with] the SARA law.  [Defendants are] acting as a gatekeeper and refusing to release or deliver me to [B]ellevue."  (*Id.*)  Plaintiff alleges that he asked Defendant Lockwood if he could be transferred to Bellevue and "she told [Plaintiff] no."  (*Id.*)  Finally, Plaintiff alleges that either John Doe 1 or 2 "told [his] sister that [her] address was approved, only to deny it later."  (Compl. at 4.)  Plaintiff elaborates on this allegation in the FAC, stating that "John Doe 1 approved [P]laintiff's [sister's] address and John Doe 2 arbitrarily rescind[ed] that approval without adequate notice and the opportunity to be heard . . . ."  (FAC ¶ 2–3.)

Plaintiff does not allege that he was barred from challenging the denial of his proposed residences through an Article 78 proceeding or of writ of habeas corpus.  (*See generally* Compl.; FAC.)  And, as discussed above, the mere existence of those remedies is enough to defeat a procedural due process claim.  *See Hayes*, 2016 WL 1746109, at *4–5; *Moore*, 220 F. Supp. 3d at 294–95.  Thus, the Court finds that Plaintiff has insufficiently alleged a procedural due process violation to survive a motion to dismiss.

      7.  Qualified Immunity

      The doctrine of qualified immunity generally shields "government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quotation marks omitted).  This protection attaches "only if (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law."  *Coggins v. Buonora*, 776 F.3d 108, 114 (2d Cir. 2015) (quotation marks omitted).  In this context, a court "is guided by two questions: first, whether the facts show that the defendants' conduct violated [the] plaintiffs' constitutional rights, and second, whether the right was clearly established at the time of the defendants' actions."  *Golodner v. Berliner*, 770 F.3d 196, 201 (2d Cir. 2014) (alterations and quotation marks omitted).

      Here, the second prong of the inquiry need not be reached because, as discussed above, Plaintiff has not plausibly pled that Defendants violated his constitutional rights.  *See Posr v. City of N.Y.*, No. 10-CV-2551, 2013 WL 2419142, at *10 n.8 (S.D.N.Y. June 4, 2013) ("Because [the defendant] did not violate [the] [p]aintiff's [constitutional] rights, there is no need to consider if [the defendant] is entitled to qualified immunity."), *aff'd sub nom. Posr v.*

*Ueberbacher*, 569 Fed. App'x. 32 (2d Cir. 2014).  Thus, the Court will not opine on whether Defendants are entitled to qualified immunity at this stage in the litigation.

### III. Conclusion

For the reasons stated above, the Court grants Defendants' Motion To Dismiss.  In light of Plaintiff's pro se status, and because this is the first adjudication of Plaintiff's claims on the merits, Plaintiff's claims are dismissed without prejudice.  If Plaintiff wishes to file an amended complaint alleging additional facts and otherwise addressing the deficiencies identified above, Plaintiff must do so within 30 days of the date of this Opinion & Order.  The new amended complaint will replace, not supplement, the complaint currently before the Court.  It therefore must contain *all* of the claims and factual allegations Plaintiff wishes the Court to consider. Failure to properly and timely amend will likely result in dismissal of the claims against Defendant with prejudice.

The Clerk of Court is respectfully directed to terminate the pending Motion, (Dkt. No. 31), and to mail a copy of this Opinion & Order to Plaintiff.


SO ORDERED.

DATED:        February 2, 2022
              White Plains, New York

                                         _____
                                         KENNETH M. KARAS
                                         UNITED STATES DISTRICT JUDGE